UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AYLA STAR McINERNEY,

               Plaintiff,

v.	1:14-CV-0329
	(GTS)
COMM'R. SOC. SEC.,

               Defendant.
_____

APPEARANCES:	OF COUNSEL:

STEPHEN J. MASTAITIS, P.C.	STEPHEN J. MASTAITIS, ESQ.
 Counsel for Plaintiff
1412 Route 9P
Saratoga Springs, NY 12866

U.S. SOCIAL SECURITY ADMIN.	KAREN T. CALLAHAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this Social Security action filed by Ayla Star McInerney ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 15, 19.) For the reasons set forth below, Plaintiff's motion is denied in and Defendant's motion is granted.

I.     RELEVANT BACKGROUND

   A.     **Factual Background**

Plaintiff was born on June 16, 1991. (T. 108.) She completed high school and one year of college. (T. 155.) Generally, Plaintiff's alleged disability consists of mood disorder, attention deficit hyperactivity disorder ("ADHD") and borderline personality disorder. (T. 154.) Plaintiff previously worked as a retail associate. (T. 145.)

   B.     **Procedural History**

On August 22, 2011, Plaintiff applied for supplemental security income under Title XVI ("SSI"). (T. 58.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 24, 2012, Plaintiff appeared before the ALJ, Robert Wright. (T. 28-57.) On October 16, 2012 ALJ Wright issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-27.) On November 13, 2012, Plaintiff requested an Appeal Council ("AC") review, which was denied on January 22, 2014. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-24.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 22, 2011. (T. 14.) Second, the ALJ found Plaintiff had the severe impairments of mood disorder, ADHD, and borderline personality disorder. (*Id.*) The ALJ determined Plaintiff's physical impairments of ankle pain, wrist pain and obesity to be non-severe impairments. (T. 14-15.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the

listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15-16.) The ALJ specifically considered Listing §§ 12.04 and 12.06. (*Id.*) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, with additional limitations. (T. 16.) Specifically, Plaintiff was limited to "unskilled work, such as requiring a specific vocational preparation of 1 or 2 per the Dictionary of Occupational Titles ("DOT"), which is simple and routine and limited to low stress, defined as having only occasional decision making, changes in work setting, and interaction with others." (*Id.*) Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22-23.) Specifically, the ALJ called on the testimony of a vocational expert ("VE") who testified Plaintiff could perform work as a cleaner/housekeeper (DOT 323.687-014), kitchen helper/dishwasher (DOT 318.687-010), and electronic assembly worker (DOT 729.687-010). (T. 23.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in his determination Plaintiff was capable of sustained gainful employment; specifically, he failed to properly assess mental limitations imposed on Plaintiff by the medical opinions in the record and therefore the reliance on VE testimony was faulty. (Dkt. No. 19 at 11-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues the AC failed to remand based on new and material evidence. (*Id.* at 13-20.) Within her second argument Plaintiff argues the evidence submitted to the AC supports a finding that (a) the ALJ erred in his step two

determination that Plaintiff's physical impairments were non-severe and (b) the ALJ erred in his credibility determination. (*Id.*)

### B. Defendant's Arguments

Defendant makes essentially three arguments. Defendant argues the ALJ's decision is supported by substantial evidence because (a) the ALJ appropriately assessed Plaintiff's credibility, (b) the VE evidence provided substantial evidence supporting the ALJ's step five decision, and (c) new evidence submitted to the AC does not provide a basis for remand. (Dkt. No. 15 at 7-21 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers

whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ's RFC Determination is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 5-12 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues the ALJ's RFC determination failed to include the full extent of Plaintiff's mental limitations, specifically, Plaintiff can only perform work "absen[t] of any stress." (Dkt. No. 19 at 12 [Pl.'s Mem. of Law].) Therefore, Plaintiff argues, the ALJ's step five conclusion was also in error as the hypothetical posed to the VE failed to incorporate all of Plaintiff's limitations. Defendant argues the ALJ's determination is supported by substantial evidence.

The ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). The opinion of a treating physician is entitled to controlling weight when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic

6

techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012).

When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Here, the record contains treatment notes from Plaintiff's treating psychiatrist, Fabio Urresta, M.D., M.S. and Valerie Ramsey-Cummins, NPP. Anita Giovannucci, LMHC, and Darby Salluzzo, LCSW, also treated Plaintiff and provided medical source statements. In June of 2011 Plaintiff began her treatment with Dr. Urresta. (T. 200.) Dr. Urresta noted her thoughts were "clear and organized," her memory was "intact," her concentration was "adequate," she had difficulty completing serial sevens, and her insight into her illness and social judgment was "intact." (T. 204.) He diagnosed Plaintiff with mood disorder, ADHD and borderline personality disorder. (*Id.*) On July 8, 2011 Dr. Urresta noted Plaintiff remained isolative, but enjoyed her work at Petco. (T. 206.) He noted her mood was depressed and she had difficulty sleeping; however, she was fully oriented with no signs of anxiety, no signs of ADHD, and her insight and judgment were

7

"intact." (T. 207.) Ms. Ramsey-Cummings met with Plaintiff on July 20, 2011. At that time she noted that her sleep had improved, her memory was "intact," and she showed no signs of anxiety. (T. 209.)

On August 10, 2011 Plaintiff reported her depressive symptoms were "maybe 50%" improved. (T. 211.) Ms. Ramsey-Cummings noted Plaintiff's memory was "intact," there were no signs of anxiety, and her insight and judgment were "intact." (T. 212.) Ms. Ramsey-Cummings also noted Plaintiff's grandmother indicated Plaintiff's symptoms improved with medication. (*Id.*) Plaintiff met with Ms. Ramsey-Cumming again on August 31, 2011. Plaintiff noted her attention had improved, but she made "several mistakes" at work. (T. 214.) Ms. Ramsey-Cummins observed Plaintiff's memory was "intact," concentration was "adequate," and reminded Plaintiff to take her medication before work. (T. 215.)

On September 21, 2011 Plaintiff informed Ms. Ramsey-Cummins that her mood was stable, but she had difficulty focusing and felt distracted. (T. 216.) Plaintiff stated she was let go of her job because of discrepancies in the cash drawer. (*Id.*) Ms. Ramsey-Cummins observed no signs of depression or anxiety, and Plaintiff's insight and judgment were "intact." (T. 217.) Plaintiff's prescription for Adderall was increased. (*Id.*)

On October 12, 2011 Plaintiff's mood was stable, but "intervals of sadness persist." (T. 331.) Ms. Ramsey-Cummins observed an "intact" memory, "adequate" concentration, and "intact" judgment and insight. (T. 332.) On November 29, 2011 Plaintiff denied anxiety and sadness, but stated her low mood and low energy continued. (T. 334.) Plaintiff also found the increase in holiday traffic at the retail store

she worked at stressful. (*Id.*) She was looking forward to starting college classes in January. (*Id.*) Ms. Ramsey-Cummins observed that "neither depression nor mood elevation [was] evident," memory was "intact," and insight and judgment were "intact." (T. 335.)

On December 27, 2011 Plaintiff reported low motivation, but good energy level when she was with friends. (T. 337.) Ms. Ramsey-Cummins noted Plaintiff isolated herself at home to avoid her "overbearing" grandmother. (*Id.*) Again, Ms. Ramsey-Cummins noted adequate concentration and an intact memory. (T. 338.)

On February 16, 2012 Dr. Urresta observed Plaintiff as stable, but tense. (T. 340.) Dr. Urresta stated that her body language conveyed an underlying depressive mood and noted signs of anxiety. (*Id.*) On March 15, 2012 Dr. Urresta noted Plaintiff's mood was "neutral and stable." (T. 342.) He observed no signs of anxiety. (*Id.*) On April 27, 2012 Dr. Urresta again noted that Plaintiff was stable, but tense with signs of anxiety. (T. 344.) On July 12 and August 28, 2012 Dr. Urresta noted Plaintiff was tense with mild anxiety. (T. 352-3, 350, 348.) On August 28 he noted Plaintiff was happy with her new job; however, her grandmother was "very interested" in having Plaintiff receive SSI. (T. 348.)

On October 25, 2011 Plaintiff underwent a psychiatric evaluation by consultative examiner Arlene Broska, Ph.D. Dr. Broska stated in her medical source statement that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration for periods of time; her memory was within normal limits; she could maintain a regular schedule; she could perform complex tasks independently; she could make "some" appropriate decisions;

9

she may have difficulty relating adequately with others; and she may have difficulty "appropriately dealing with stress." (T. 241.) The ALJ afforded Dr. Broska's opinion "great weight." (T. 22.)

The opinions of Dr. Urresta, Dr. Broska and Ms. Ramsey-Cummins conflict with the opinions of Ms. Giovannucci and Ms. Salluzzo. Ms. Giovannucci provided three mental health functional assessments dated October 4, 2011 (T. 226-237), August 29, 2012 (T.360-61), and September 20, 2012 (T. 355-59).

In her October statement she observed Plaintiff would be able to perform work that was in "short duration and without stress." (T. 234.) In her August statement Ms. Giovannucci opined Plaintiff had "no useful ability to function" when dealing with normal work stress. (T. 360.) She also opined Plaintiff would be "unable to meet competitive standards," or was "seriously limited," in many areas of unskilled work; however, she could work in coordination with coworkers. (T. 360.)

In her September statement, Ms. Giovannucci noted she treated Plaintiff from May 10, 2011 until April 20, 2012. (T. 355.) Ms. Giovannucci opined Plaintiff had "moderate limitations" in activities of daily living, "marked limitations" in maintaining social functioning, "marked limitations" in concentration, persistence or pace, and "continually experienced" episodes of deterioration or decompensation that cause Plaintiff to withdraw from that situation or to experience exacerbation of signs and symptoms. (T. 356-57.)[1] The ALJ afforded Ms. Giovannucci's opinions "little weight." (T.

---

[1] According to the form completed by Ms. Giovannucci, "A mild impairment is one which has a slight effect upon the ability to function; a moderate impairment is one which affects, but does not preclude, the ability to function; a marked impairment seriously affects the ability to function; an extreme impairment precludes the ability to function." The form further notes that a marked impairment, "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the

10

20.) The ALJ reasoned that the opinions were not supported by treatment notes and were not made contemporaneous with treatment. (T. 20-21.)[2]

Ms. Salluzza supplied a medical source statement dated September 19, 2012. (T. 304-09.) Ms. Salluzza started treating Plaintiff in April 2012. (T. 305.) She opined Plaintiff was "tired and withdrawn." (T. 307.) She observed Plaintiff had "moderate limitations" in her activities of daily living; "marked limitations" in her ability to maintain social functioning; "marked limitation[s]" in the area of concentration, persistence or pace and would "continually experience[]" episodes of deterioration or decompensation that would cause Plaintiff to withdraw from that situation or to experience exacerbation of signs and symptoms. (T. 307-08.) The ALJ afforded Ms. Salluzza's limitations "little weight," reasoning the statement was internally inconsistent and Ms. Salluzza failed to provide support for her opinions. (T. 21.)

Plaintiff argues Ms. Giovannucci and Ms. Salluzza's opinions indicate that Plaintiff could perform work which was part time and absent any stress. (Dkt. No. 19 at 12 [Pl.'s Mem. of Law].) Plaintiff contends these limitations were appropriately conveyed to the VE in one of the ALJ's hypothetical question which eliminated unskilled jobs which required a production rate or pace work. (*Id.* referencing T. 56.) Plaintiff argues

---

degree of limitation is such as to interfere seriously with the individual's ability to function independently, appropriately, effectively, and on a sustained basis. Marked limitations constitute listing level impairment." (T. 356.)

[2] The ALJ also based her weight determination on the fact that Ms. Giovannucci is "not an acceptable medical source." (T. 20) To be sure, an ALJ cannot discredit the opinion of an "other source" solely because it is an "other source." *See Kelly v. Astrue*, 09-CV-1359, 2011 WL 817507, at *6 (N.D.N.Y. Jan., 18, 2011)(holding that the ALJ was not free to simply disregard a licensed clinical social worker's assessment on the basis that he was not an acceptable medical source alone). However here the ALJ weighs Ms. Giovannucci's opinion based on several appropriate factors, not just her status as an 'other source.'

the ALJ failed to "explain why the VE's response [. . .] was not controlling." (Dkt. No. 19 at 12 [Pl.'s Mem. of Law].)

The ALJ's RFC limiting Plaintiff to "low stress" work is supported by substantial evidence in the record, namely the medical evidence provided by Dr. Urresta, Ms. Ramsey-Cummins, and Dr. Broska; therefore, the ALJ did not ere in failing to restrict Plaintiff to occupations that were completely absent of stress and had "no production rate or pace." Plaintiff does not argue the ALJ failed to properly afford Ms. Giovannucci or Ms. Salluzza's opinions weight. Even if the Plaintiff did raise that argument, this Court concludes the ALJ afforded their opinions proper weight given the lack of supporting documentation and inconsistencies with the remainder of the medical evidence. Plaintiff argues a restriction to "no stress" imposed by Ms. Giovannucci and Ms. Salluzzo is supported by treatment notes provided by Ms. Ramsey-Cummins and Dr. Broska, but fails to provide support from the record. (Dkt. No. 19 at 13 [Pl.'s Mem. of Law].) The ALJ's limitation to "low stress" work is supported by substantial evidence, remand is not necessary.

### B. Whether the AC Failed to Remand Based on "New and Material" Evidence

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 17-19 [Def.'s Mem. of Law].) The Court adds the following analysis.

The AC will consider new and material evidence only where it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 416.1470(b). If it relates to that time period, the AC will review to determine if the ALJ's actions, findings, or

conclusion are contrary to the weight of the evidence currently on record. *Id.* If the evidence provided "does not add so much as to make the ALJ's decision contrary to the weight of the evidence" remand is not necessary. *Rutkowski v. Astrue*, 368 F.App'x 226, 229 (2d Cir. 2010). Evidence is "new if it is not merely cumulative of what is already in the record, and is material if it is both (1) relevant to the claimant's condition during the time period for which benefits have been denied—that is, the period on or before the ALJ's decision, and (2) probative—in other words, that there is a 'reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently'." *Webb v. Apfel,* 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000)(citing *Jones v. Sullivan,* 949 F.2d 57, 60 [2d Cir .1990]).

Plaintiff supplied the AC with additional evidence including a vocational evaluation report dated November 26, 2012 (T. 362-71), medical records from Valley Orthopaedic Specialists dated November 3, 2006 to March 10, 2008 (T. 372-77), medical records from Griffin Hospital dated March 25, 2003 to April 3, 2009 (T. 378-418), medical records from Griffin Hospital dated January 20, 2010 to March 19, 2010 (T. 419-30), and medical records from Yale-New Haven Hospital dated September 7, 2006 (T. 431-32).

The vocational evaluation reported is not "new and material." The evaluation was conducted outside the relevant time period. (T. 371.) The bulk of evidence from Valley Orthopedic Specialists, Griffin Hospital, Griffin Hospital Rehabilitation and Yale-New Haven Hospital is dated prior to Plaintiff's September 1, 2008 alleged onset date and is not material. The evidence shows complaints of wrist and ankle pain, but medical imaging was normal and treatment was conservative. Foot and ankle x-rays performed

13

on April 3, 2009 were normal. (T. 379-380.) An x-ray of the right wrist was normal in January 2008. (T. 382.) Plaintiff's left foot pain was treated with over the counter Motrin. (T. 374.) Plaintiff's left wrist had full range of motion with no swelling or tenderness. (T. 376.) Plaintiff was treated in the emergency room for anxiety in March of 2007 after having a "stressful day" and "not eating much." (T. 384-385.) Overall, the evidence falls outside of the relevant time period. Those records which do concern the period in question are not "new and material," because they fail to provide information which would make the ALJ's decision contrary to the evidence already in the record.

      Plaintiff specifically argues, given the new evidence the ALJ would have found Plaintiff's wrist and foot/ankle impairments severe. According to Social Security, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). The standard for a finding of severity under the second step of the sequential analysis has been found to be de minimis, and is intended only to screen out the truly weakest of cases. *Davis v. Colvin*, No. 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995). At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of her condition. *See* 20 C.F.R. § 416.912(a); *Bowen*, 482 U.S. at 146. For the reasons stated above, this Court finds the ALJ made a proper determination at step two, further the evidence provided to the AC would not lead to a different conclusion. Therefore, remand is not necessary on this issue.

    **C.**    **Whether the ALJ Failed to Properly Assess Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 12-15 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility and evidence provided to the AC further supports Plaintiff's credibility. (Dkt. No. 19 at 16 [Pl.'s Mem. of Law].)

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009)(quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater

15

level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he found her statements "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (T. 17)[3] Plaintiff contends the ALJ's credibility determination would have been different given the evidence submitted to the AC. (Dkt. No. 19 at16 [Pl.'s Mem. of Law].) However, as discussed in Part IV.B, the evidence provided was not "new and material" to Plaintiff's case; therefore, the evidence supplied would not have altered the ALJ's credibility determination.

Plaintiff makes the conclusory argument that the ALJ failed to properly support his credibility determination and analysis. (*Id.* at 17 [Pl.'s Mem. of Law].) However, the ALJ discussed Plaintiff's hearing testimony regarding her impairments and the

---

[3] To be sure, although a "claimant's credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." *Gehm v. Astrue,* 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); *see also Patterson v. Astrue,* 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013)("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination."). However, as is the case here, the ALJ provided a thorough discussion of his credibility determination in accordance with Social Security Regulations and case law.

symptoms they impose. (T. 17.) The ALJ further discussed inconsistencies within Plaintiff's reports and treatment history. (*Id.*) The ALJ found Plaintiff's symptoms and allegations were not well supported as she did not receive mental health treatment until June 2011, well after her alleged onset date of September 2008, and that she had never been psychiatrically hospitalized. (*Id.*) The ALJ went into great detail outlining the medical record, the treatment Plaintiff received, and the affect treatment had on her impairments, which was outlined in Part IV.A. (T. 18-21.) The ALJ also discussed Plaintiff's activities of daily living, including Plaintiff's ability to care for herself, her ability to handle money, and her ability to get along with friends and others. (T. 18.)

For these reasons, the ALJ's credibility determination is supported by substantial evidence and remand is not necessary.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 19) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:	June 26, 2015
	Syracuse, NY

_____
Glenn T. Suddaby
U.S. District Judge